PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  14-2044
_____

ALEXANDRA CHAVARRIAGA,

Appellant

v.

STATE OF NEW JERSEY DEPARTMENT OF
CORRECTIONS; ATTORNEY GENERAL NEW JERSEY;
NEW JERSEY COMMISSIONER OF CORRECTIONS;
CORRECTIONS SERGEANT BROWN; JOHN DOE #1;
JOHN DOE #2; JANE DOE; MARCUS WAIR; PHILIP
SHEPPARD; JOHN DOE #3; JOHN DOE #4; VARIOUS
UNKNOWN CORRECTIONS EMPLOYEES ASSIGNED
TO THE SPECIAL INVESTIGATIONS DIVISION OF THE
DEPARTMENT OF CORRECTIONS
_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. Civ. No. 3-12-cv-04313)
Honorable Michael A. Shipp, District Judge
_____

Argued June 18, 2015

BEFORE:  AMBRO, FUENTES, and GREENBERG,
Circuit Judges

(Filed: November 16, 2015)

_____

Fredric J. Gross, Esq.
7 East Kings Highway
Mt. Ephraim, NJ 08059

Noel C. Crowley, Esq.        [Argued]
Crowley & Crowley
20 Park Place, Suite 206
Morristown, NJ 07960
        *Attorneys for Appellant*

Dianne M. Moratti, Esq.
Daniel M. Vannella, Esq.    [Argued]
Lisa A. Puglisi, Esq.
Office of Attorney General of New Jersey
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, NJ 08625
        *Attorneys for Appellees*

_____


OPINION
_____

2

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on an appeal in a case in which a former inmate in the custody of the New Jersey Department of Corrections ("NJDOC"), now the appellant, Alexandra Chavarriaga, claims that correctional officers violated her constitutional rights when, without proper authorization, they took her from one place of confinement to another where they denied her potable water, clothing, and sanitary napkins and related medications and subjected her to an unlawful body cavity search. The District Court on March 27, 2014, granted three defendants' motion for summary judgment and dismissed appellant's remaining claims against the other defendants, as it held that she did not demonstrate that there were issues of material fact requiring the Court to deny the summary judgment motion and appellant's complaint did not allege facts constituting a cause of action. Chavarriaga v. New Jersey, Civ. No. 12-4313, 2014 WL 1276345 (D.N.J. Mar. 27, 2014) ("Chavarriaga").

We will affirm the District Court's March 27, 2014 order granting summary judgment under Fed. R. Civ. P. 56 to defendants former New Jersey Attorney General Jeffery S. Chiesa, New Jersey Commissioner of Corrections Gary M. Lanigan, and Correctional Sergeant Janice Brown, and, with the significant exceptions that we discuss below, we will affirm the order dismissing the action pursuant to Fed. R. Civ. P. 12(b)(6) as to the remaining defendants, the NJDOC, John Doe #1, John Doe #2, John Doe #3, John Doe #4, Jane Doe, Marcus Wair, Philip Sheppard, and Various Unknown Corrections Employees. Appellant sued Chiesa in his official and individual capacity but

3

she sued the other defendants only in their individual capacities.[1] The defendants other than the NJDOC, Chiesa, and Lanigan are NJDOC correctional officers. We reach our result even though only Chiesa, Lanigan, and Brown were served with process and have been the only defendants participating in this case.[2] We also will affirm the Court's denial of appellant's cross-motion for partial summary judgment against Lanigan, Brown, and the NJDOC and its denial of appellant's motion for sanctions against the participating defendants' counsel arising from what appellant considers was their obstruction of the discovery process. In addition, we will affirm the Court's denial of appellant's motion for class action certification as moot, but do so without prejudice to appellant renewing the motion on the remand for which we are providing. Finally, we will remand the case to the District Court for further proceedings that can go forward only if appellant is able to amend her complaint to name real persons as defendants.

## II. STATEMENT OF JURISDICTION

[1] Appellant recites in her brief that she sued the other defendants in both their individual and official capacities but her complaint recites that she was suing only Chiesa in both capacities. This discrepancy has no bearing on our outcome because if she had indicated in her complaint that she was suing all of the defendants in both capacities our result would not be different.

[2] We review the matter with respect to the other defendants even if fictional or unknown because the District Court decided the case on the merits with respect to all the defendants and appellant's appeal is from an order including that disposition.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367, and we have jurisdiction under 28 U.S.C. § 1291.

## III.  STANDARD OF REVIEW

We exercise plenary review over a district court's grant of summary judgment.  Blackhawk v. Pennsylvania, 381 F.3d 202, 206 (3d Cir. 2004).  A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556 (1986); Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000).  A dispute over an issue is "genuine" only if a reasonable jury could find in the non-movant's favor on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510 (1986).  But the party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation and internal quotation marks omitted).  Rather, that party must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial.  See Celotex, 477 U.S. at 323-24, 106 S.Ct. at 2551.

We also exercise plenary review over a district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim.  Pension Trust Fund for Operating Eng'rs v. Mortg.

Asset Securitization Transactions, Inc., 730 F.3d 263, 268 (3d Cir. 2013); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). When considering a motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim, "[f]irst, the court must take note of the elements a plaintiff must plead to state a claim." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (citation and internal quotation marks omitted). Then the court must determine if a claim has facial plausibility, a threshold that can be reached only when a plaintiff pleads factual content—as opposed to mere conclusions—allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Although the court "must accept the allegations in the [c]omplaint as true, [it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)) (internal quotation marks omitted).

## IV. BACKGROUND

### A. Factual Allegations

Appellant alleged in her final amended complaint, which we usually simply call "the complaint," that defendants subjected her to cruel and unusual punishment and denied her equal protection and due process of law in violation of 42 U.S.C. §§ 1983, 1985, and 1986, the United States Constitution,

6

and parallel New Jersey state law.[3]   In addition, appellant claimed that defendants did not follow mandated state-law procedures in making the body cavity search of her.  When we consider these allegations, we view them in a light most favorable to appellant.  Appellant alleged that in 2010 and 2011, while she was in NJDOC custody, custodial personnel placed her at different times in the Garrett House, a residential community release program, the New Jersey State Prison ("NJSP"), and the Edna Mahan Correctional Facility ("EMCF"), and that they unlawfully transferred her three times from the Garrett House to the other facilities.  Appellant remained in NJDOC custody until March 25, 2013, when she completed her sentence.

Appellant alleged in her complaint that she was subjected to constitutional violations on three separate occasions in 2010 and 2011, during the times that she was being transferred to the EMCF from the Garrett House and, while en route, the custodial personnel temporarily housed her in a cell at the NJSP.  Indeed, she alleged that certain of the transfers in themselves denied her due process and equal protection of the law.  Beyond the transfers, she alleged that the first violation occurred on April 7, 2010, when custodial personnel first removed her from the Garrett House for two alleged infractions of NJDOC rules and she was held unclothed at the NJSP overnight in cell South-l-GG-12, a cell that she characterizes as a "Psychiatric Unit." (J.A. 23, 24, 75.)  But that allegation is somewhat tangential to

---

[3] In her complaint, appellant alleged a cause of action against Chiesa and Lanigan based on 42 U.S.C. § 1343(a)(2), a statute that does not exist.  (J.A. 71.)  It is possible that she intended to cite 28 U.S.C. § 1343(a), which is a jurisdictional statute, but, if so, it would add nothing to her case.

her case as she does not focus on the events surrounding her first removal from the Garrett House.

Rather, the case centers on appellant's allegations concerning constitutional violations from which she claims to have suffered after having been transferred from the Garrett House during her second confinement at the NJSP from May 31, 2011, to June 2, 2011. She asserted in her complaint that on this occasion the correctional personnel transferred her from the Garrett House in retaliation for a suit she had brought against detectives in the Somerset County prosecutor's office arising from her claim that they used excessive force in arresting her. (J.A. 77.) She claimed that defendants John Doe #1 and John Doe #2 made the second transfer on May 31, 2011, when they drove her from the Garrett House to the NJSP without lawful authority and that when they arrived at the NJSP, Sergeant Brown, a NJDOC supervisor, "ordered all of [her] clothing removed, whereupon [her] clothing was taken from her." (J.A. 79.) She asserted that Brown assigned her to cell South-l-GG-12, where she remained unclothed and was allegedly visible from time to time to "male staff and prisoners" for the next three days. (J.A. 81.) Appellant alleged that defendant Jane Doe entered her cell during that three-day period and made a painful and unjustified manual body cavity search of her rectum and vagina. (J.A. 79-80.) Appellant also alleged that the plumbing in her cell was not working and, as a result, she was not provided with potable water during this three-day period, and that when she asked for drinking water the correctional officers told her to drink from the cell's toilet bowl. (J.A. 80.) Further, she contends that she was not permitted to shower until the last day she was at NJSP, on June 2, 2011. Although there was a shower in the South-1-GG unit, appellant alleged that she was

8

forced to "walk down a spiral staircase to another unit and then down a hallway, naked and shackled, in plain view of male prisoners and staff, to reach a shower." (J.A. 81.) She also alleged that the officers denied her sanitary napkins and medications for migraine headaches and menstrual cramps. (J.A. 80-81.)

Appellant alleged that during a third transfer from the Garrett House, the NJDOC housed her again at the NJSP in cell South-l-GG-12, from December 22, 2011, to December 23, 2011. (J.A. 82.) She alleged that the correctional personnel made this third transfer and determined her cell placement in the NJSP because of what she claimed was a meritless disciplinary complaint that had been filed against her in retaliation for her suit against the Somerset County detectives. Appellant alleged that the custodial personnel again deprived her of potable water during this third confinement in cell South-l-GG-12. (J.A. 87.)[4]

[4] Appellant's complaint only briefly touched on her first and third confinements at the NJSP. As we have indicated, her allegations largely focused on her transfers among the three facilities that we have identified and on due process, equal protection, and cruel and unusual punishment claims based on the denial of clothing, potable water, and sanitary napkins and related medications, as well as the manual body cavity search, during her second NJSP confinement. For this reason, and because she did not allege that the participating defendants were involved directly with her treatment during either her first or third NJSP confinements, we largely focus our discussion on her allegations regarding her transfers and her treatment during her second confinement at the NJSP from May 31, 2011, to June 2, 2011.

Appellant alleged that Chiesa and Lanigan were "well aware of some or all of the wrongdoing described [in the complaint], [but] did nothing to punish the wrongdoers and did nothing to prevent recurrences, thereby approving of the outrageous conduct inflicted upon [her] and making themselves co-conspirators, aiders and abettors of the other individual defendants." (J.A. 92.) For that reason, she claims that Chiesa and Lanigan violated her federal and state constitutional rights and are liable to her under 42 U.S.C. §§ 1983, 1985, and 1986 and N.J. Stat. Ann. § 10:6-2c. (J.A. 69, 71.) Though appellant alleged that Chiesa and Lanigan had at least some knowledge of the wrongdoings that she described in her complaint, she did not identify their source of this knowledge. Appellant also alleged that the NJSP personnel did not repair the faucet and plumbing in cell South-l-GG-12 because the NJSP's Special Investigations Division ("SID") wanted to reserve that cell as a torture cell for disfavored inmates like herself. (J.A. 85.) Appellant also alleged that certain defendants conspired to issue false disciplinary charges against her and that the NJDOC wrongfully withheld sentence credits from her after the dismissal of the disciplinary charges, thereby extending her time in custody. (J.A. 86-88.)[5]

---

[5] In addition to her claim that defendants violated federal and state constitutional provisions and civil rights laws, appellant alleged in her complaint that defendants violated the New Jersey common law (J.A. 73-74), a contention on which she expanded in her brief to include the New Jersey Torts Claim Act, which to a degree embraces common law principles. Appellant's br. at 36. We, however, do not address these New Jersey law contentions because she did not specify in her brief the Tort Claims Act sections that she claims defendants violated and she

10

B. Procedural History

Appellant initiated this action by filing a complaint seeking class action status in the Superior Court of New Jersey against the NJDOC, Chiesa, Lanigan, Greg Bartkowski, an administrator at the NJSP, Brown, John Doe #1, John Doe #2, and Jane Doe. On July 12, 2012, Chiesa, Lanigan, and Brown, the only defendants served with process and thus the only defendants participating in this case, removed the action to the District Court. Appellant filed her final amended complaint on August 15, 2013, adding Marcus Wair and Philip Sheppard, employees in the NJDOC's SID, and John Doe #3 and John Doe #4 as defendants. Inasmuch as neither Wair nor Sheppard has been served with process neither has participated in this case.

cites only one New Jersey state court case in her opening brief and one New Jersey state court case in her reply brief so she did not develop the claims adequately. In the circumstances, she has abandoned her Tort Claims Act and common law claims. See United States v. Irizarry, 341 F.3d 273, 286 n.3 (3d Cir. 2003) (defendant waived for review on appeal claim that district court abused its discretion in denying his severance motion, where he did not raise claim in his statement of issues presented on appeal, and he did not pursue claim in argument section of his brief); McClintock v. Eichelberger, 169 F.3d 812, 817 (3d Cir. 1999) (declining to entertain a First Amendment retaliation argument because "appellants did not plead it as the basis for relief in their complaint"); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 499 n.1 (3d Cir. 1997) (noting that "we will not read causes of action into a complaint when they are not present" because to do otherwise would deprive defendants of the notice required by Fed. R. Civ. P. 8).

Appellant did not include Bartkowski as a defendant in this complaint. (J.A. 70-74.)

On August 29, 2013, Chiesa, Lanigan, and Brown moved to dismiss the complaint pursuant to Rule 12(b)(6) and, alternatively, moved for summary judgment under Rule 56. On September 19, 2013, appellant, in reliance on Rule 56(d), filed a motion requesting the opportunity to take the depositions of: (1) Lanigan; (2) individuals who provided certifications in support of the participating defendants' motion for summary judgment; and (3) an individual who she claimed provided her with therapy during her confinement at the Garrett House, but these depositions never were taken and, according to appellant, the District Court never passed on the motion. (J.A. 117-21.) Then, on December 9, 2013, appellant filed a cross-motion seeking an order certifying the matter as a class action, granting her a partial summary judgment, and imposing sanctions against the participating defendants' attorneys on the ground that they had obstructed the discovery process. On March 27, 2014, the District Court entered an order making the disposition of this case that we set forth at the outset of this opinion. On April 24, 2014, appellant filed a timely notice of appeal from the Court's March 27, 2014 order.

## V. DISCUSSION

A. <u>The District Court Properly Granted Summary Judgment to Chiesa and Lanigan.</u>

1. Appellant failed to allege adequately a § 1983 claim against Chiesa and Lanigan.

12

Appellant appeals from the District Court's March 27, 2014 order granting summary judgment to Chiesa and Lanigan on her claims against them pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and N.J. Stat. Ann. § 10:6-2c.[6]  Appellant alleged in her complaint that Chiesa and Lanigan, by their failure to protect her, made "themselves co-conspirators, aiders and abettors of the other individual defendants." (J.A. 92.)  Therefore, she claims that they violated her federal and state constitutional rights.

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 1714 n.5 (1998)).  Next, a plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct.

---

[6] Appellant also appeals from that order to the extent that it granted summary judgment in favor of Brown but we discuss that aspect of her appeal separately, as it raises issues distinct from those relating to Chiesa and Lanigan.  Appellant contends that the District Court granted summary judgment to Chiesa and Lanigan before she had an adequate opportunity for discovery.  But we are satisfied that further discovery could not have revealed facts that would have altered our result on their summary judgment motion.

Id. Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive. Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6. A plaintiff "must portray specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).[7]

The District Court correctly granted Chiesa and Lanigan summary judgment on appellant's § 1983 complaint because her allegations did not describe their conduct in sufficient detail to support her conclusory allegations that they had either actual contemporaneous knowledge of or any personal involvement in any violation of her constitutional rights. See Rode, 845 F.2d at 1207. Furthermore, inasmuch as the imposition of liability in an action under § 1983 and the other civil rights statutes she cites depends on the plaintiff showing that the defendant had personal involvement in the alleged wrongs, appellant cannot predicate defendants' liability on a respondeat superior theory. See Parratt v. Taylor, 451 U.S. 527, 537 n.3, 101 S.Ct. 1908, 1913 n.3 (1981). The District Court granted Chiesa and Lanigan summary judgment because it believed, although appellant contended otherwise, that she was attempting to establish that they were liable based on their subordinates' alleged acts, and therefore appellant impermissibly predicated her complaint

---

[7] The defenses and immunities applicable to federal constitutional claims apply with equal force to parallel New Jersey state constitutional claims. See generally N.J. Stat. Ann. §§ 10:6-1 et seq. Consequently, we do not make a separate analysis of the state-law constitutional claims.

against them on a <u>respondeat</u> <u>superior</u> theory of liability.[8]

We realize that appellant argues that, rather than relying on a <u>respondeat</u> <u>superior</u> basis for liability, she alleged that Chiesa and Lanigan were liable as policymakers. Courts recognize that liability under § 1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff. <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989). However, to establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. <u>Id.</u> at 1114 ("Thus, when a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation."); <u>see also</u> <u>Berlanti v. Bodman</u>, 780 F.2d 296, 300-01 (3d Cir. 1985).

Appellant's arguments regarding policymaking liability

---

[8] We also point out that a court can affirm a judgment for any reason supported by the record and therefore a court may affirm an order for summary judgment for a defendant if the complaint does not state a claim on which relief may be granted. <u>See</u> <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 610 F. Supp. 2d 600, 607 (S.D. Tex. 2009) ("While 'failure to state a claim' is usually challenged by a motion to dismiss under Rule 12(b)(6), it also may serve as a basis for summary judgment. In a summary judgment context, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." (citing <u>Whalen v. Carter</u>, 954 F.2d 1087, 1098 (5th Cir. 1992))).

are insufficient. Appellant's principal allegations were that the prison personnel deprived her of potable water at the NJSP for several days on two separate occasions, subjected her to an impermissible manual body cavity search during her second confinement at the NJSP, denied her clothing on two separate occasions at the NJSP, and denied her sanitary napkins and medications during her second confinement at the NJSP. But she did not allege in her complaint that the persons directly involved in this treatment or the other treatment of which she complains were implementing policies that Chiesa or Lanigan had promulgated or were following existing practices that they countenanced likely to result in the violation of inmates' constitutional rights. Thus, she did not allege that Chiesa or Lanigan established policies to deny potable water to inmates, to subject inmates to excessively intrusive body cavity searches, or to subject inmates to the other treatment of which she complains. Therefore, neither Chiesa nor Lanigan can be held responsible on a policymaker theory of liability for the alleged violations of appellant's constitutional rights with respect to the denial of water, the body cavity search, or other treatment of which she complains. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 417, 117 S.Ct. 1382, 1388, 1394 (1997). Inasmuch as appellant did not allege facts supporting any of her claims that could justify imposing liability on Chiesa or Lanigan on the basis of any theory of liability under § 1983, we will affirm the order for summary judgment on the aspects of the claims in the complaint against them under that section and parallel New Jersey law.

> 2.    Appellant's §§ 1985 and 1986 claims against Chiesa and Lanigan fail for the same reasons as her § 1983 claims

16

against them.

Appellant advanced conspiracy claims in her complaint pursuant to 42 U.S.C. §§ 1985 and 1986 against Chiesa and Lanigan, but, like her § 1983 claims, they also fail as a matter of law. Under 42 U.S.C. § 1985, a plaintiff may bring a claim for conspiracy to violate an individual's civil rights in violation of § 1983, and under 42 U.S.C. § 1986 a plaintiff may bring a claim based on the allegations made in support of a § 1983 claim against a responsible official who does not prevent the conspiratorial acts enumerated in § 1985. But a defendant cannot be liable under § 1985 or § 1986 unless the defendant had some awareness of the underlying violation. See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[A] § 1986 plaintiff must show that . . . the defendant had actual knowledge of a § 1985 conspiracy . . . ."); Rode, 845 F.2d at 1207-08 (rejecting plaintiff's § 1985 conspiracy claim because she did not show defendant's knowledge of alleged civil rights violation). Inasmuch as appellant did not plead a valid § 1983 claim against either Chiesa or Lanigan because she did not make an adequate allegation that they had knowledge of any deprivation of her constitutional rights, her §§ 1985 and 1986 claims against them fail as well.[9] We accordingly will affirm

---

[9] The District Court believed that a claim appellant made regarding deprivation of sentence credits was moot because she had served her maximum sentence and had been released from custody. Chavarriaga, 2014 WL 1276345, at *14. We, however, disagree because appellant is seeking damages on the claim, not an order for her release from custody. Therefore, we have considered her deprivation of sentence credits claim on the merits but have concluded that it is not meritorious. Accordingly, we will affirm the Court's dismissal of this claim.

17

In this regard, we point out that the complaint alleged that the disciplinary proceedings against appellant were dismissed, but afterwards "the Department of Corrections arbitrarily and capriciously refused to restore any of the lost remission credits" and the failure to do so "wrongly delayed [appellant from] obtaining freedom." (J.A. 88.) Furthermore, in her brief she listed as a related case a habeas corpus action in which she asserted that the NJDOC did not restore the lost good time credits following the dismissal of the disciplinary charges that led to her loss of the credits. Appellant's br. at 4. But the Court correctly dismissed the NJDOC from this case on Eleventh Amendment grounds. We are aware that even though appellant does not contend that the NJDOC lacks Eleventh Amendment immunity, she does contend that the participating defendants waived an Eleventh Amendment immunity defense by removing the case to the District Court. We are perplexed by this contention because the NJDOC did not remove the case and it is the only defendant to whom the Court granted Eleventh Amendment immunity. Surely it cannot be argued seriously that the participating defendants could waive the NJDOC's immunity when it had not been served with process in the case and thus did not have the opportunity to decline to consent to the remand. See 28 U.S.C. § 1446(b)(2)(A). Though appellant did allege that corrections personnel conspired to deny her good time credits, she did not explain how they were involved in awarding or restoring the credits. (J.A. 92.) Moreover, appellant did not adequately plead a restoration of credits claim against the participating defendants in her complaint or, indeed, plead such a claim against any defendant except perhaps the NJDOC. However, as we have indicated, the Court properly dismissed the NJDOC on immunity grounds. Regardless of

the District Court's grant of summary judgment to Chiesa and Lanigan on the counts of the complaint based on appellant's §§ 1985 and 1986 claims and her claims under parallel state law.[10]

### B. The District Court Properly Dismissed Appellant's Due Process and Equal Protection Claims Against Brown, John Doe #1, John Doe #2, and Unnamed Defendants Based on Her Transfers Among Facilities.

The District Court held that appellant's complaint that her transfers among the three facilities violated her federal and state constitutional rights to due process and equal protection of the law did not state a claim on which relief could be granted.[11]

---

Eleventh Amendment immunity, however, § 1983 does not create a cause of action against states or state officials acting in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 2307, 2309 (1989). Finally, on the sentence credits issue we point out that a claim that credits due an inmate were not restored is distinct from a claim that the disciplinary proceedings leading to the loss of the credits were initiated wrongfully.

[10] Chiesa and Lanigan cannot be liable for appellant's transfers because, as we explain below, the transfers did not violate her constitutional rights.

[11] Appellant contends that the District Court should not have granted summary judgment to Brown as she did not have an adequate opportunity to conduct discovery on her claims against Brown. Yet she did not include Brown in her September 19, 2013 Rule 56(d) motion requesting an opportunity to take

In particular, appellant alleged that Brown, a NJDOC supervisor, violated her due process and equal protection rights when she conspired with unidentified prison personnel to remove appellant from the Garrett House and confine her in NJSP cell South-l-GG-12.

Due process of law protects "persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2389 (2005). But an inmate does not have the right to "be placed in any particular prison," including halfway homes and community release programs. Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538 (1976); Asquith v. Dep't of Corr., 186 F.3d 407, 411-12 (3d Cir. 1999). A state has broad authority to confine an inmate in any of its institutions. Meachum, 427 U.S.

_____

depositions so she could oppose the participating defendants' motion for summary judgment even though she had not deposed Brown already. In any event, we are satisfied that Brown was entitled to a judgment under Rule 12(b)(6) and therefore appellant's loss of opportunity for discovery, if she had such a loss, did not prejudice her as a court adjudicates a Rule 12(b)(6) motion on the basis of the complaint and not on the basis of a record developed for consideration on a summary judgment motion. Once again, we note that a court may affirm a judgment for any reason supported by the record and thus we may affirm an order for summary judgment for a defendant if the complaint does not state a claim on which relief may be granted. See In re Enron Corp. Sec., Derivative & ERISA Litig., 610 F. Supp. 2d 600, 607 (S.D. Tex. 2009). This principle is particularly applicable here, as Brown, a prevailing defendant, sought a dismissal on that basis in the District Court.

20

at 224, 96 S.Ct. at 2538. Thus, courts recognize that a state's authority to place inmates anywhere within the prison system is among "a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id. at 225, 96 S.Ct. at 2538. Consequently, custodial personnel do not infringe an inmate's liberty interests by placing her in one custodial facility rather than another. Id.

Our analysis leads us to affirm the District Court's grant of summary judgment to Brown on appellant's complaint arising from her movement to, and placement in, various facilities, and, by extension, the dismissal of the complaint making those claims against all the other defendants. Although the NJDOC does have policies regarding custodial placements, these policies and the Due Process Clause do not give an inmate a liberty interest in being housed in a particular institution or at a particular custody level. See, e.g., Olim v. Wakinekona, 461 U.S. 238, 244-45, 103 S.Ct. 1741, 1745 (1983); Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976). Furthermore, appellant did not plead facts, as distinguished from conclusions, explaining how her transfers among custodial facilities deprived her of equal protection of the law or violated her due process rights. Therefore, even assuming arguendo that Brown participated in the decisions to transfer appellant among facilities and personally determined her cell assignment at the NJSP, appellant did not make legally justified allegations that could establish that Brown violated her equal protection or due process rights in doing so. Of course, for the reasons we have set forth, appellant's due process and equal protection claims fail against all the other defendants as well.

C.      The District Court Erred in Part in

21

Analyzing Appellant's Eighth
Amendment Allegations.

Pursuant to § 1983, appellant brought Eighth and Fourteenth Amendment claims against Brown and unnamed defendants predicated on their denying her potable water during her second and third confinements in the NJSP and clothing during her first and second confinements. She also asserts that she was forced to appear without clothing before male prison personnel and inmates and was denied sanitary napkins and related medications for migraine headaches and menstrual cramps while she was menstruating. Our first step in analyzing these claims is to "identify the exact contours of the underlying right said to have been violated" and to determine whether appellant has "alleged a deprivation of a constitutional right at all." Nicini, 212 F.3d at 806. Consequently, we begin our discussion of this point by noting that the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981).

Notwithstanding a state's broad powers to determine where to place inmates, the Constitution does not permit their inhumane treatment because "the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2476, 2480 (1993).[12]   Thus, prison officials violate an inmate's Eighth

[12] The Eighth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Furman v. Georgia, 408 U.S. 238, 400, 92 S.Ct. 2726, 2809 (1972). Accordingly, we only need discuss the alleged violations of those amendments under the Eighth

Amendment rights when they deprive her of "a single identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327 (1991). But an inmate's claim that she was subjected to such a deprivation does not rise to the level of an Eighth Amendment violation unless: (1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to her future health. Farmer v. Brennan, 511 U.S. 825, 843, 114 S.Ct. 1970, 1977 (1994).

An inmate seeking to prove that she has been subjected to an Eighth Amendment violation therefore must make both an objective and a subjective showing to impose liability on a defendant. Objectively, an inmate must show that the deprivation was "sufficiently serious" so that it reached the level of an Eighth Amendment violation. Wilson, 501 U.S. at 297, 111 S.Ct. at 2324. Subjectively, an inmate must show that the defendant acted with "deliberate indifference" to her health or safety. Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. But to demonstrate a defendant's deliberate indifference an inmate need not show that the defendant intentionally sought to cause the inmate harm or acted with knowledge that harm to the inmate probably would result from the defendant's act or failure to act. Id. at 835-36, 114 S.Ct. at 1978. Though purposeful conduct would show at least deliberate indifference, an inmate satisfies her burden to make that showing if she demonstrates that the defendant acted or failed to act despite having

Amendment.

23

knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm. Id. at 842, 114 S.Ct. at 1981. The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm.

As we noted above, however, in our discussion of appellant's complaint against Chiesa and Lanigan, she cannot predicate liability on her § 1983 claims on a respondeat superior basis. See Rode, 845 F.2d at 1207. To set forth a claim for supervisory liability under § 1983, an inmate must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118). Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury. Id.

Appellant alleged that Brown was responsible for depriving her of potable water and clothing during her confinement in cell South-l-GG-12 at the NJSP from May 31,

24

2011, through June 2, 2011, and thereby violated her Eighth Amendment right against cruel and unusual punishment. Appellant claims that Brown ordered the removal of her clothing at the beginning of this three-day confinement at the NJSP and did not provide her with clothes or other covering until the end of the stay. Appellant also claims in her brief that Brown, as a supervisor, knew that she was being denied potable water for the three-day period, and that Brown knew that correctional officers told her to drink from the toilet bowl when she requested drinking water. Appellant's br. at 18. She also alleged that she was forced to walk to a shower unclothed in the view of male prison personnel and inmates and was denied sanitary napkins and medications for migraine headaches and menstrual cramps when she was menstruating. In addition, appellant alleged that she was denied potable water during her third confinement at the NJSP from December 22, 2011, to December 23, 2011, though she does not charge that Brown was responsible for this second potable water deprivation.

On this appeal, we determine whether appellant sufficiently pleaded a cognizable Eighth Amendment constitutional injury so that her complaint could survive a motion to dismiss pursuant to Rule 12(b)(6), for, unless she did, the District Court did not err in granting Brown summary judgment. The Court reviewed appellant's allegations and held that her "Eighth Amendment claims fail to state a cognizable claim of a constitutional deprivation that would entitle [her] to relief, and the claims are dismissed with prejudice against Defendant Brown and all named and unidentified Defendants in this action." Chavarriaga, 2014 WL 1276345, at *10. But when we accept the factual allegations in appellant's complaint, we conclude that the Court partially erred in its analysis of her

25

Eighth Amendment claims.

### 1. Objective prong of Eighth Amendment analysis

We assess first whether appellant's allegations were sufficiently serious so that, if proven, they set forth facts constituting a violation of her Eighth Amendment rights. We are satisfied that appellant's allegation that she was deprived of potable water for three consecutive days during her second confinement at the NJSP did set forth such a claim because she alleged facts in sufficient detail that, if proven, would show that she was deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834, 114 S.Ct at 1977 (citation and internal quotation marks omitted). We reach the same conclusion with respect to the denial of potable water during her third confinement in the NJSP even though the duration of the deprivation was for a shorter period than during her second confinement. We also conclude that appellant's claims that she was forced to walk or otherwise be naked in the presence of male prison personnel and inmates enroute to the shower and denied sanitary napkins and medications for migraine headaches and menstrual cramps set forth facts that, if proven, would constitute Eight Amendment violations.[13] We are not dissuaded from reaching these conclusions by our recognition that, as the District Court observed, "[f]ederal courts have consistently held that isolated denials of necessities in prison for a short duration . . . do not rise to the level of cruel and unusual punishment in

---

[13] We are combining the denial of sanitary napkins and mediations for migraine headaches and menstrual cramps as they are related, and therefore when we refer to the denial of sanitary napkins we are including the denial of the medications.

violation of the Eighth Amendment." Chavarriaga, 2014 WL 1276345, at *9.

We are of the view that appellant's allegations that prison personnel intentionally denied her access to potable water for three days on one occasion and two days on another raised her allegations to a level so that rather than charging a tolerable, though uncomfortable, set of conditions, she had been subjected to a prohibited inhumane deprivation. See Farmer, 511 U.S. at 832, 114 S.Ct. at 1976. A complete denial of water for three days other than the water in a toilet bowl lends gravity to appellant's allegations because a denial of water for that length of time—especially when a prisoner is menstruating as appellant asserts that she was on one occasion—poses a clear "substantial risk of serious harm" to an inmate. See id. at 833-34, 114 S.Ct. at 1977. We reach the same conclusion with respect to appellant's two-day NJSP confinement from December 22, 2011, to December 23, 2011. Thus, we hold that appellant pleaded facts with respect to the denial of water that, if true, could lead to a conclusion that she was subjected to cruel and unusual punishment. See id.; Young v. Quinlan, 960 F.3d 351, 365 (3d Cir. 1992).

A denial of clothing in itself, however, though troubling, in the circumstances of this case is not a deprivation that rises to the level of the deprivation of water and consequently we are satisfied that the denial of clothing claim, except to the extent that it related to her being naked in the presence of male prison personnel and inmates, requires little discussion. It is sufficient to point out that the court in Williams v. Delo found that there had not been an Eighth Amendment violation where the prisoner was placed in a strip cell without clothes but was sheltered from the elements. 49 F.3d 442, 443-47 (8th Cir. 1995).

27

Consequently, inasmuch as appellant did not make an objective showing that she suffered an Eighth Amendment violation merely by reason of the denial of clothing, we largely focus our analysis of her Eighth Amendment claim against Brown to the denial of potable water.

Our opinion, with respect to the denial of clothing, however, should not be overread. In this regard we point out that the Supreme Court in Farmer, 511 U.S. at 832, 114 S.Ct. at 1976, indicated that prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." Thus, we are limiting our holding with respect to the denial of clothing to the facts of this case. Moreover, we exclude from our holding appellant's claim that she was forced to walk down a staircase and a hallway naked in plain view of male prison personnel and inmates to reach a shower or otherwise was exposed while naked to male prison personnel and inmates. In our view this allegation asserts an Eighth Amendment claim because forcing her to be naked in these circumstances would be a malicious act intended to humiliate her for no legitimate penological reason. See King v. McCary 781 F.3d 889, 896, 898 (7th Cir. 2015); Lee v. Down, 641 F.2d 1117, 1119 (4th Cir. 1981).

We also hold that appellant alleged facts that constituted a cause of action when she claimed that officers denied her sanitary napkins and medications while she was menstruating. Clearly, that was an allegation sufficient to constitute an Eighth Amendment violation. See Adkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005).

> 2. Subjective prong of Eighth Amendment analysis

28

When we address the subjective prong of appellant's Eighth Amendment claim we are concerned with Brown as a named and participating defendant and we consider first whether the deprivation of water can be tied to what appellant contends was Brown's intentional act or deliberate indifference to her health or safety during her May 31, 2011, to June 2, 2011 confinement at the NJSP. See Farmer, 511 U.S. at 834, 114 S.Ct. at 1977; Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). "A prison official must 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837, 114 S.Ct. at 1977). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Id. (quoting Farmer, 511 U.S. at 847, 114 S.Ct. at 1984).

We are satisfied that appellant's allegations that Brown intentionally denied her potable water for three days or was deliberately indifferent to the denial were insufficient to impose liability on Brown because appellant did not adequately allege facts attributing the denial to Brown. Although the complaint pleaded that Brown was one of an unspecified number of supervisors of the correctional officers who interacted with appellant, appellant did not make specific allegations concerning Brown's duties as a supervisor, or her interactions or communications with correctional officers in general, let alone with the officers directly involved with appellant's custody. The complaint did allege that Brown forced appellant to drink water "from a dirty toilet bowl," but this allegation was conclusory because appellant did not plead that Brown gave a direction for appellant to drink in this way.

29

It is clear that appellant based her complaint against Brown for the denial of water on the actions of subordinate personnel, and thus appellant was seeking to place liability on Brown on a respondeat superior theory or was alleging that Brown was liable on some other theory merely because of her position as a supervisor. But Brown's position as a supervisor without more did not make her responsible for her subordinates' conduct. Accordingly, we cannot infer from the factual allegations in the complaint that Brown should have been alerted to a history of mistreatment of inmates in general or of appellant in particular. And, although appellant alleged in her complaint that she was placed in a known "condemned" cell that frequently was without water, that allegation does not support a claim that Brown knew or should have known that appellant was deprived of water, subjecting her to a substantial risk of harm during her three-day confinement at the NJSP from May 31, 2011, until June 2, 2011. See Wood v. Beauclair, 692 F.3d 1041, 1051 (9th Cir. 2012) (prison supervisors lacked knowledge of risk to inmate when supervisor had no reason to suspect mistreatment and inmate did not complain of actions to prison officials until long after the incidents occurred).

We also are satisfied that appellant did not adequately plead that Brown was instrumental in requiring her to go to the shower or otherwise be naked while in the presence of male prison personnel and inmates and in not supplying her with sanitary napkins and medications. Rather, though she did plead that Brown directed that her clothing be taken from her, her allegations with respect to the walk to the shower or otherwise be naked in the presence of male prison personnel and inmates and the denial of sanitary napkins and medications are generalized with respect to the individuals responsible for these

30

actions.

Although appellant did not adequately plead that Brown should have known that she was deprived of water for three days, we reiterate our rejection of the District Court's conclusion that the deprivations of potable water in this case could not be cruel and unusual punishment under the Eighth Amendment. See Chavarriaga, 2014 WL 1276345, at *9. Thus, while we uphold the grant of summary judgment on the denial of potable water as well as on the naked shower walk and other naked exposures and the denial of sanitary napkin and medications claims in Brown's favor, we will reverse the District Court's dismissal of the Eighth Amendment claims against the unknown defendants that appellant alleged were responsible for these deprivations and will remand the case for further proceedings on these claims.

> D.    The District Court Partly Erred In Analyzing Appellant's Eighth Amendment Allegations and Related State-Law Claims Relating to her Body Cavity Search.

Appellant's next claim of unconstitutional punishment challenges the legality of a cavity search in which a prison guard inserted her fingers into appellant's vagina and rectum. In advancing this claim, appellant did not assert that she was deprived of any of life's necessities but rather that she was subjected to a painful and unwarranted use of force. "In the excessive force context, society's expectations are different[]" than in the context of prison conditions, and accordingly the test for an Eighth Amendment violation is different as well. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992).

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. (citation omitted).

The District Court held that the cavity search was justifiable as a "routine security measure," noting that the Supreme Court has "held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail." Chavarriaga, 2014 WL 127634, at *12-13. But in that Supreme Court case, Florence v. Board of Chosen Freeholders, the Court was concerned with whether a uniform policy of "strip searching" detainees held in a general jail population violated the detainees' rights under the Fourth Amendment—not the Eighth Amendment on which appellant relies.[14] 132 S.Ct. 1510, 1515-16 (2012). More importantly, the strip searches in Florence involved only the visual inspection of detainees' body cavities, and there "[we]re no allegations that the detainees . . . were touched in any way as part of the searches." Id. at 1515. Indeed, in response to an amici's "concerns about instances of officers engaging in intentional

_____

[14] The District Court treated the body cavity search claim under the Fourth Amendment as it held that appellant "does not allege any facts to show that the strip search was so outside the scope of a reasonable search policy that it would rise to the level of a Fourth Amendment violation." Chavarriaga, 2014 WL 127634, at *13 (internal quotation marks omitted). But our result on the body cavity search issue would not be different even if we considered that appellant made the claim under the Fourth Amendment. In any event, appellant pled the claim under the Eighth Amendment. (J.A. 92.)

humiliation and other abusive practices," the Court recognized that there may "be legitimate concerns about the invasiveness of searches that involve the touching of detainees." Id. at 1523. Thus, Florence does not govern here.

Florence does stand for the proposition that "a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" 132 S.Ct. at 1515 (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987)).[15] But appellant does not challenge a prison regulation—in fact, she alleged that Jane Doe searched her body cavities in violation of the applicable regulations. The factors our Court considers in applying the "legitimate penological interest" test further demonstrate that the test is ill-suited for assessing unauthorized and malicious conduct on the part of prison guards. See Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012).

The District Court also determined that it should defer to the judgment of corrections officials on the question of whether

---

[15] In J.B. v. Fassnacht, 801 F.3d 336 (3d Cir. 2015), we held, contrary to the district court in that case, that the holding in Florence applies to juvenile offenders admitted to the general population of a juvenile detention center. Consequently, we reversed an order denying summary judgment to police and public official defendants in an action brought against them by a juvenile subjected to a strip search upon his detention in a juvenile facility. The significance of the case here is its focus on the importance of security in custodial facilities. However, the search in Fassnacht was not nearly as intrusive as appellant's body cavity search and thus the case adds little support to Jane Doe's position on this appeal.

the cavity search was permissible, and it concluded that the search was permissible as "a routine security measure." Chavarriaga, 2014 WL 127634, at *13. Appellant plainly alleged facts that demonstrate that the cavity search was not routine for, as we already have explained, she asserted that the prison personnel made such a search on only one of the three occasions she was held at the NJSP. In addition, she alleged that the search was conducted in a manner that violated applicable New Jersey regulations. In this regard, the regulations provide that before such a search is made, a supervisor must have reasonable suspicion to believe that contraband will be found in the inmate's body cavity. Then, if there is to be a search, the prison personnel must take the inmate to the infirmary and offer the inmate the assistance of a medical provider in removing the contraband. The regulations further provide that prison personnel cannot remove contraband involuntarily unless they follow a detailed set of procedures and that the supervisor authorizing the search must prepare a written report of the basis for, conduct of, and results of the search. See N.J. Admin. Code § 10A:3-5.8. According to the complaint the prison personnel disregarded these procedures in their entirety.

But the constitutional question that we face is not whether New Jersey's policies on cavity searches are reasonable or even whether the prison personnel followed them. Rather, the constitutional question is whether appellant plausibly has alleged that Jane Doe maliciously searched her body cavities. See Hudson, 503 U.S. at 9, 112 S.Ct. at 1000. To that end, the allegation that the prison personnel did not follow the regulations gives some support to an inference that the search was malicious. We find additional support for drawing that inference because appellant alleged that the cavity search was so

painful that during the search she cracked a molar in two while clenching her teeth. (J.A. 80.) Nevertheless, neither the District Court nor the participating defendants have addressed the question of whether the cavity search violated the Eighth Amendment. After our consideration of the body cavity search issue, we will reverse the District Court's order dismissing appellant's Eighth Amendment claims against Jane Doe and will remand the case for further proceedings on these claims.

Notwithstanding our foregoing discussion, we hold that the District Court correctly granted Brown summary judgment on appellant's Eighth Amendment body cavity search claim. In her brief, appellant attempts to implicate Brown in her manual body cavity search by claiming that "Jane Doe's simultaneous digital penetration of plaintiff's vagina and rectum was committed in the presence of her direct supervisor, Sgt. Brown." Appellant's br. at 31. Yet this statement, though quite specific, was in appellant's brief and not her complaint, and is of questionable significance as she goes on in her brief to indicate that Brown "evidently authorized and supervised" the search, a comment that suggests that she only is surmising that Brown was involved in the search. Id. at 33 (emphasis added). In any event, appellant by making these allegations in her brief cannot overcome the lack of an adequate pleading in her complaint alleging with specificity that Brown was involved in the search. In fact, although appellant did allege in her complaint that Brown "supervised various DOC personnel," she did not allege that Brown supervised Jane Doe. (J.A. 72.) Although a court on a motion to dismiss ordinarily "must accept the allegations in the complaint as true," it is not compelled to accept assertions in a brief without support in the pleadings. Morrow, 719 F.3d at 165. After all, a brief is not a pleading. We therefore will

35

affirm the District Court's grant of summary judgment on the body cavity claim in favor of Brown.

E.      Equal Protection Claims with Respect to Denial of Potable Water, the Body Cavity Search, and Contentions of Other Constitutional Violations.

Appellant asserts that she was denied potable water, subjected to the body cavity search, and forced to endure the other violations to which we have referred for discriminatory reasons that violated the Equal Protection Clause of the Fourteenth Amendment. But she does not assert that defendants discriminated against her because of her race or any other protected classification; rather, she claims that defendants treated her inhumanely because they were retaliating against her because of the lawsuit she filed against Somerset County detectives who she claims used excessive force in arresting her.

Appellant's assertions are most easily understood as being a First Amendment retaliation claim. "Retaliating against a prisoner for the exercise of [her] constitutional rights is unconstitutional." Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012). If defendants punished appellant for exercising her right to petition the courts, they are liable for violating the First Amendment. See id. But even though appellant raised the First Amendment in her brief, she did not plead a First Amendment claim in her complaint. Therefore, there is not a First Amendment claim properly before us. See McClintock v. Eichelberger, 169 F.3d 812, 817 (3d Cir. 1999); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 499 (3d Cir. 1997).

Instead of pleading her claim under the First Amendment, as we have indicated appellant asserted in her complaint that

defendants' acts of retaliation violated the Equal Protection Clause. But inasmuch as appellant did not allege that her membership in a protected group was the motivation for unfavorable treatment, the only claim available to her is that she was arbitrarily singled out for this treatment as a "class of one." In order "to state a claim for [a] 'class of one' [denial of] equal protection, a plaintiff must at a minimum allege that [s]he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008); see also Renchenski v. Williams, 622 F.3d 315, 337-38 (3d Cir. 2010) (analyzing such a claim in the prison context).

The District Court dismissed appellant's equal protection claim solely on the ground that her disciplinary infractions prompted her transfers to the NJSP and therefore there was a rational basis for the transfers. (J.A. 24.) Appellant disputes this conclusion, noting that the second transfer was not authorized and the prison has admitted that it was made in error. Moreover, appellant claims that a false accusation engineered by corrections personnel led to the third transfer.

We are satisfied that the District Court mischaracterized appellant's equal protection claim. Though, as we held above, appellant's transfers did not violate the equal protection clause, and even if there was a rational basis for transferring appellant to the NJSP, she contends there was no rational basis for her treatment once she arrived there. Indeed, appellant hit the "perverse jackpot" of being assigned to the same cell without potable water on all three occasions that she was confined in the NJSP. Appellant alleges that the adverse treatment to which she was subjected did not comply with official prison policies,

including those relating to body cavity searches, and she contends that they rose to the level of a constitutional violation. We find support for this allegation for, as noted above, the cavity search was plainly not a routine security measure because the prison personnel made such a search only during appellant's second confinement in the NJSP and, so far as we are aware, not because appellant committed a disciplinary infraction or in some way led the prison personnel to believe that she was concealing contraband in her body. When considered in light of the fact that appellant had filed the suit against the detectives that we described above, her treatment may support a retaliation claim and, if so, the search was not made for a legitimate penological reason. Accordingly, we believe that it reasonably could be inferred that prison personnel targeted her intentionally without a legitimate penological basis.[16] The District Court erred in concluding otherwise and thus, on remand, appellant should be able to proceed on her body cavity search, denial of potable water, being forced to walk to the shower or otherwise exposed while naked in the presence of male prison personnel and inmates, and denial of sanitary napkins and medications claims on an equal protection as well as an Eighth Amendment basis.

### F. Appellant's State-Law Claims

As described above, appellant asserts in her brief, though not in her complaint, that her body cavity search violated the criteria in N.J. Admin. Code § 10A:3-5.8, a regulation governing inmates' body cavity searches and requiring that correctional personnel conduct body cavity searches at a

---

[16] A jury might decline to draw that inference if it believed that the prison personnel would not have been concerned with appellant's suit against other individuals.

38

facility's infirmary. But in her complaint appellant made this allegation without citation to the specific regulation that she claims was violated. We nevertheless conclude that the pleading is adequate to survive a motion to dismiss, and therefore we will reverse the District Court's Rule 12(b)(6) dismissal of this state-law claim as to Jane Doe. We, however, will not preclude a defendant substituted for Jane Doe from arguing that a violation of N.J. Admin. Code § 10A:3-5.8(b) cannot give rise to civil liability as a definitive resolution on this issue should not be made in the absence of the actual defendant charged with the violation.

We have not overlooked appellant's attempt in her brief to implicate Brown in a N.J. Admin. Code § 10A:3-5.8 violation on the basis of a different provision than subsection 5.8(b). On appeal, appellant asserts in her brief that Brown, as a supervisor, violated N.J. Admin. Code § 10A:3-5.8(g), which provides:

> [T]he custody staff member in charge shall prepare a written report of the results of a body cavity search that shall be made part of the inmate's record and shall include, but is not limited to, the following information: 1. A statement of facts indicating reasonable suspicion for the search; 2. The name of the custody staff member in charge who authorized the search.

But the complaint did not make an adequate allegation against Brown under N.J. Admin. Code § 10A:3-5.8(g) even if a violation of that provision could be actionable, as it did not allege that Brown was Jane Doe's supervisor or provide any other allegations sufficient to link Brown to appellant's manual body cavity search. After all, even if at some times Brown

39

supervised Jane Doe, Brown surely was not on duty around the clock, so we cannot draw an inference from the complaint that Brown gave an instruction to Jane Doe to make the search. Thus, the complaint did not adequately plead that Brown was the individual who should have made a timely record of the grounds for reasonable suspicion that the search would lead to the discovery of contraband.

Considering all the circumstances of the case, we are satisfied that there is no basis to hold Brown liable for any violation of state-law regulations governing searches. Appellant did not make sufficient allegations in her complaint that Brown was or should have been involved in the oversight of her search, or, in fact, was involved in the search. Though we accept the allegation that appellant was subject to a manual body cavity search in a cell contrary to a regulation requiring that all body cavity searches of inmates be conducted in an institution's infirmary on the basis of a supervisor's finding of reasonable suspicion, appellant has not tied Brown to any violation of this regulation. We accordingly will affirm the grant of summary judgment on appellant's state-law body cavity search claim in favor of Brown.[17]

---

[17] Appellant filed a cross-motion for summary judgment against Lanigan, Brown, and the NJDOC and she appeals the District Court's denial of that motion. "Although an order denying [a] motion for summary judgment is not ordinarily final and appealable, it becomes appealable when accompanied by an order granting a cross-motion for summary judgment." Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 557 n.1 (3d Cir. 2008) (citing Nazay v. Miller, 949 F.2d 1323, 1328 (3d Cir. 1991)). That scenario is the procedural posture here because

### G. Putative Class Claims

Inasmuch as the District Court dismissed all of appellant's claims under Rule 12(b)(6), except to the extent that it granted the participating defendants summary judgment which had the same consequence as a Rule 12(b)(6) dismissal, the Court understandably denied as moot her motion for class action certification. But to the extent that our disposition of this appeal includes a remand of this case to the District Court for further proceedings on certain of appellant's claims, we cannot say that a motion for class action certification will continue to be moot. In the circumstances, we will affirm the order denying appellant's motion for class action certification but do so without prejudice to appellant seeking class action certification on the remand.

## VI. CONCLUSION

We will affirm the District Court's order for summary judgment in favor of Chiesa, Lanigan, and Brown. We will reverse the Court's order of dismissal of appellant's cruel and unusual punishment Eighth Amendment and Fourteenth Amendment and parallel state-law claims against the unnamed defendants with respect to the alleged denial of potable water

---

Lanigan and Brown obtained summary judgment and the Court granted equivalent relief to the NJDOC. In view of those dispositions, we have jurisdiction over appellant's appeal from the denial of her motion for summary judgment. It is clear that in light of our other holdings, the Court correctly denied that motion.

and sanitary napkins and related medications to appellant and with respect to appellant being required to go to the shower or otherwise be exposed while naked in the presence of male prison personnel and inmates. We will reverse the order of dismissal of appellant's cruel and unusual punishment body cavity search claims under the Eighth and Fourteenth Amendments and parallel state-law constitutional claims as to Jane Doe. We will reverse the order of dismissal of appellant's Fourteenth Amendment equal protection claims and parallel state-law denial of potable water and sanitary napkins and medications and being forced to walk or otherwise be exposed while naked in the presence of male prison personnel and inmates and body cavity search claims. We will reverse the dismissal of the body cavity search claim in violation of New Jersey regulations against unknown defendants. We will affirm the order denying appellant's motion for class action certification without prejudice to its renewal on remand. We will affirm the order denying appellant's cross-motions for partial summary judgment against Lanigan, Brown, and the DOC and for sanctions against participating defendants' counsel. We will remand the case to the District Court for further proceedings on the claims the dismissal of which we are reversing and, if presented, for further proceedings on a renewed motion for class action certification. We emphasize that the only substantive claims that may go forward on the remand are those related to the denial of water, the body cavity search, the denial of sanitary napkins and related medications, and the forcing of appellant to appear naked in the presence of male prison personnel and inmates.[18]

---

[18] We have not determined whether, if appellant attempts to proceed in this action on remand, she should be permitted to

42

We express no opinion on the conclusiveness of our findings on any newly added defendants on the remand as that matter will be for the District Court to decide. We note that there are two named defendants, Sheppard and Wair, other than the participating defendants who already are in the case, but we will not allow appellant on the remand to proceed against them at this late date, as they have been parties since the filing of the final amended complaint in this case and appellant has not been prosecuting the case against them. See Fed. R. Civ. P. 15(c). In the circumstances, we regard the case against them as abandoned. The parties will bear their own costs on this appeal.

---

amend her complaint to name actual defendants because the parties have not briefed the point. Therefore, the right to challenge such potential amendments is preserved.