**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4676
_____

JUAN DIAZ, JR.,
            Appellant

v.

DIRECTOR FEDERAL BUREAU OF PRISONS;
GENERAL COUNSEL OF THE FEDERAL BUREAU OF PRISONS;
REGIONAL DIRECTOR; WARDEN LEWISBURG USP;
ASSISTANT WARDEN LEWISBURG USP; CAPTAIN LEWISBURG USP;
LIEUTENANT LEWISBURG USP; L. POTTER, EMT-P
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-12-cv-02519)
District Court Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2017
Before:  GREENAWAY, JR., GREENBERG and ROTH, Circuit Judges

(Opinion filed: November 20, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Juan Diaz, Jr., a prisoner, assaulted a prison guard as the two were walking down the hall.[1] Diaz was tackled and restrained and then moved to a holding cell, where he spat on the guard he had assaulted. Diaz also spat on another guard. Thereafter, a use of force team carried Diaz to another area of the prison and placed him face down in four-point restraints. Diaz complained that one restraint was too tight, and it was immediately loosened. Diaz remained in four-point restraints for twenty-four hours. He was then placed in ambulatory restraints—which are much less restrictive and allow an inmate to eat, drink, and use the bathroom without staff intervention—for another twenty hours. The undisputed record evidence shows that, pursuant to Department of Corrections Policy, Diaz's restraints were checked every fifteen minutes for the entire time that he was restrained. He was offered routine opportunities to drink water, eat meals, and use the restroom. Nevertheless, Diaz remained defiant and combative, cursing staff and threatening to harm them and again harm the guard he initially assaulted. Once Diaz regained his composure, he was released from the ambulatory restraints.

Diaz filed suit under 42 U.S.C. § 1983.[2] Diaz claimed that Defendant Whitaker, who supervised the use of force team and oversaw Diaz's placement in the four-point restraints, maliciously and wantonly inflicted unnecessary pain when he ordered Diaz placed in the restraints. He claimed that, during the hours he was restrained, Defendant

[1] According to Diaz, he was upset that the guard had "lied on him" during a disciplinary proceeding earlier that day. Although Diaz's opening brief seeks to downplay his aggressive behavior, he told prison staff shortly after the attack that he "went crazy on [the guard]" for lying in the proceeding.
[2] Although his second amended complaint named numerous prison officials, Diaz voluntarily dismissed all but four Defendants from the case.

Whitaker ignored his continuous complaints that the restraints were too tight, which caused a "new medical issue." In addition, Diaz claimed that Defendant Whitaker and Defendant Potter, the attending emergency medical technician, were deliberately indifferent to his needs for life's necessities—including food, water, and use of the restroom—and to his serious medical needs—i.e. the injuries caused by the overtight restraints.

The Defendants filed a motion for summary judgment, supported with declarations from Defendants Whitaker and Potter, the medical records kept while Diaz was restrained, and the logs kept by the guards and medical staff documenting the fifteen minute checks and Diaz's combative behavior—evidence that clearly rebutted Diaz's claims that the Defendants acted maliciously and were deliberately indifferent to his needs. Diaz filed arguments opposing the motion, but he offered no evidence whatsoever—in the form of an affidavit or a declaration, for example—to support the allegations in his complaint.[3] The District Court granted the Defendants' motion for summary judgment. Diaz timely appealed.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review of the District Court's order granting summary judgment. See Caprio v. Bell Atl. Sickness & Accident Plan, 374 F.3d 217, 220 (3d Cir. 2004). We will affirm.[4]

---

[3] Diaz did claim that video evidence, which the Defendants submitted to the District Court, supported his claims. However, we have reviewed that evidence. It does not support Diaz's allegations.

[4] To the extent that Diaz has raised new claims—that the Defendants violated his rights under the Fourth Amendment and prison regulations regarding the material from which the restraints were constructed—he asserted them for the first time on appeal; hence, we

3

The District Court correctly granted summary judgment on Diaz's cruel and unusual punishment claim. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (alteration in original, quotation marks omitted). Whether this standard has been met "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21 (quotation marks omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010); Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009). In the context of restraints, like the four-point and ambulatory restraints used to confine Diaz, "the Supreme Court in Hope [v. Pelzer, 536 U.S. 730, 738 (2002)] identified particular criteria relevant to the use of excessive force test." Young v. Martin, 801 F.3d 172, 180 (3d Cir. 2015). Hope held that (1) where the inmate had "already been subdued, handcuffed, [and] placed in leg irons," and (2) there was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated," then (3) subjecting the inmate to "substantial risk of physical harm" and "unnecessary pain" serves no penological justification. 536 U.S. at 738.

The record contains no evidence that Defendants acted maliciously or sadistically in administering Diaz's four-point restraints. The record evidence on this point makes clear that Diaz was behaving violently and was placed in restraints—for his protection and the protection of the staff—after he rammed his shoulder into one guard, and then

decline to address those claims here. Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal.").

4

spat in his face, and then spat in the face of another, all in spite of the guards' attempts to calm him. Cf. Young, 801 F.3d at 181 ("[Young] was not violent, combative, or self-destructive at any point leading up to his prolonged confinement in the restraint chair."). Unlike Hope, where the prisoner had been subdued and shackled and later transported from a worksite back to the prison before he was handcuffed to a "hitching post," this was not a case where "[a]ny safety concerns had long since abated." Hope, 536 U.S. at 738.

The record evidence is also clear that prison officials required Diaz to stay in four-point restraints for twenty-four hours because he remained combative, defiant, and uncooperative with staff. During this period, staff checked on Diaz every fifteen minutes, and at nearly every interval he defiantly cursed at them, and on several occasions threatened them, saying "I will kill you," "you will see what I can do," and "you just wait." He also threatened to harm the guard he had initially assaulted, warning staff to tell "that [guard] just wait." The evidence further shows that even after staff moved Diaz from four-point restraints to much-less-restrictive ambulatory restraints, he remained combative for another twenty hours; however, once Diaz became less combative and regained his composure the ambulatory restraints were removed. Accordingly, no reasonable factfinder could conclude the Defendants acted maliciously or sadistically or for the purpose of causing harm, as Diaz claimed.

Similarly, the District Court properly granted summary judgment to Defendants Whitaker and Potter on Diaz's deliberate indifference claims. Diaz's complaint can be read as asserting that Defendants Whitaker and Potter were deliberately indifferent in

5

denying him the minimal civilized measure of life's necessities—like food, water, and the ability to use the restroom—for the twenty-four hours he spent in the four-point restraints. See Parkell v. Danberg, 833 F.3d 313, 335 (3d Cir. 2016). Diaz's complaint can also be read as claiming that the Defendants were deliberately indifferent to his serious medical needs—i.e. the injuries he claims were caused by the restraints. See id. at 337.

"A prison official is deliberately indifferent if the official 'knows that [the] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Id. at 335 (quoting Chavariagga v. N. J. Dep't of Corrs., 806 F.3d 210, 229 (3d Cir. 2015)). Here, however, there is no evidence in the summary judgment record that the Defendants were deliberately indifferent. Defendant Whitaker provided evidence that prison officials checked on Diaz every fifteen minutes; he was offered water every two hours and opportunities to eat a bagged lunch at every meal time; he was also offered the opportunity to use the restroom every two hours; and that Diaz did not complain that his restraints were too tight, and any such complaint would have been referred to medical professionals. Likewise, Defendant Potter submitted evidence that Diaz rejected multiple offers to use the restroom or to drink water. The Defendants' evidence matches the prison's records, which reflect that medical staff encouraged Diaz to drink water, offered him opportunities to use the bathroom, and routinely checked Diaz's restraints, but that on several occasions Diaz refused any restraint checks. While Diaz has made various allegations about the Defendants' purported misconduct, he has not produced any evidence to survive

6

summary judgment. See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). This record would not permit a reasonable factfinder to conclude that either Defendant was deliberately indifferent to Diaz's needs.

For these reasons, we will affirm the District Court's judgment.[5] In reaching our decision, we have reviewed the evidence Diaz seeks to introduce on appeal. Because that evidence does not alter our conclusion, we treat his motion to "amend an exhibit to his complaint" as a motion to supplement the record, and we deny it.[6]

---

[5] Diaz does not challenge on appeal the District Court's ruling on his First Amendment claim, and this we will not address it here. See Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002).

[6] We also deny Diaz's request to strike Appellees' brief.