**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1148
_____

JUNE-LORI MEARS;
MICHAEL MEARS,

Appellants

v.

ELIZABETH CONNOLLY, Acting Commissioner; ROGER
BORICHEWSKI; RENEE BURAWSKI; TERESA
MCQUAIDE; MARY JO KURTIAK; CAROLE JOHNSON;
VALERIE L. MIELKE; GREYSTONE PARK PSYCHIAT-
RIC HOSPITAL; JOSEPH YOUNG; MARC LIPKUS;
JOHN VOLTARELLI; RAMONA CAHIWAT; JAY EP-
STEIN; PATRICIA TURSI; CHEETARA GOODWIN;
ELIZABETH PATTERSON; AJIBOLA OKE; JOHN DOE;
JANE DOE; STATE OF NEW JERSEY; DEPARTMENT
OF HUMAN SERVICES; ADEKUNLE DACOSTA; SHIRA
OGLESBY; ALPHONSUS OKORO
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:18-cv-16174)
U.S. District Judge: Honorable Michael A. Shipp
_____

Argued: November 17, 2021

Before: CHAGARES, *Chief Judge*, and BIBAS and
FUENTES, *Circuit Judges*

(Filed: January 31, 2022)
_____

Patrick J. Dwyer          [ARGUED]
Thomas E. Hastings
William E. McGrath, Jr.
DILWORTH PAXSON
2 Research Way
Princeton, NJ 08540

    *Counsel for Appellants*

Brett J. Haroldson          [ARGUED]
Ashley L. Costello
OFFICE OF ATTORNEY GENERAL OF NEW JERSEY
25 Market Street
Trenton, NJ 08625

    *Counsel for Appellees*
_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Most constitutional rights are rights to be left alone. The government usually has no duty to protect people from one

another. But when the government itself creates a danger, it may be liable.

June-Lori Mears says the government endangered her: when she visited her mentally ill son, a state psychiatrist and nurse left her alone, vulnerable to his assault. The District Court disagreed, dismissing all her claims.

The court erred. True, the psychiatrist merely encouraged her to visit. But the nurse did more: she supervised June's visit at first and then abandoned her mid-visit. Because June may have a claim against the nurse, we will reverse the District Court in part.

## I. BACKGROUND

On appeal from a dismissal, we take the allegations in June's complaint as true. Her son, Brenden Mears, suffers from severe bipolar disorder. This makes him prone to violent outbursts, drug abuse, and other antisocial behavior. And he has made these problems worse by refusing to take his medication. As a result, he has repeatedly been jailed and institutionalized. In 2017, he was involuntarily admitted to Greystone Park, a state-run psychiatric hospital in New Jersey, for the fourth time. He stayed there for more than two years.

During this time at Greystone, Brenden's condition got worse. He grew more and more psychotic. He stalked the halls, made an aggressive sexual comment to a staffer, and attacked other patients. He beat one of them severely enough to send him to the intensive care unit.

3

But June stood by her son and kept visiting him at Greystone. Despite his eruptions, Greystone staff encouraged her visits as part of Brenden's treatment. Before one of these visits, June asked if it was safe to visit Brenden. Though it was just days after he severely beat the other patient, his psychiatrist, Dr. Joseph Young, assured her that it was.

So June visited Brenden again. Greystone staff were supposed to supervise all patient meetings, yet no one was assigned to monitor her visit.

Brenden's head nurse, Shira Oglesby, knew of this oversight. At first, she accompanied June while she visited Brenden. But sometime during June's visit, Nurse Oglesby left the room. Brenden watched her leave "intently." App. 37 ¶ 59. Once she left, he pounced on June and beat her severely. She suffered "permanent physical and psychological injuries," including brain trauma, broken ribs, and post-traumatic stress disorder. App. 40 ¶¶ 69–70.

June and her husband Michael sued Dr. Young, Nurse Oglesby, Greystone, various other staffers, and state officials under 42 U.S.C. § 1983 and state law. Michael also sued for loss of consortium.

The District Court dismissed all claims. Sovereign immunity, it reasoned, barred the claims against Greystone and the state officials in their official capacity. Plus, state officials usually have no affirmative duty to protect people from private violence. And, the court held, these facts did not amount to a state-created danger.

4

June (and Michael) now appeal only the dismissal of her § 1983 claims against Dr. Young and Nurse Oglesby. The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under § 1291. We review de novo. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 896 n.1 (3d Cir. 2021).

## II. JUNE'S CLAIM MAY PROCEED AGAINST NURSE OGLESBY BUT NOT DR. YOUNG

The government has no general legal duty to keep people safe. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). But it assumes one "when it affirmatively places [a] person in a position of danger [that] the person would not otherwise have faced." *Kamara v. Att'y Gen.*, 420 F.3d 202, 216 (3d Cir. 2005). Then, the government must protect people from the dangers it created. The Fourteenth Amendment's Due Process Clause requires it to do so. *Id.*

To make out a state-created-danger claim, June must plausibly plead four things:

- she suffered a "foreseeable and fairly direct" harm;

- the state "acted with a degree of culpability that shocks the conscience";

- she "was a foreseeable victim … or a member of a discrete class of persons" potentially harmed "by the state's actions"; and

- the state "affirmatively used [its] authority" to "create[] a danger" or make her "more vulnerable to danger than had [it] not acted at all."

5

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks omitted).

The District Court did not reach the second and third elements, holding only that June had not adequately pleaded the first and fourth. Because she challenges only that ruling, we focus solely on those two elements. And because her § 1983 claims require personal wrongdoing, we analyze her claims against Dr. Young and Nurse Oglesby separately. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

### A. Dr. Young's encouragement to visit was not enough of an affirmative act

Start with Dr. Young. To satisfy the fourth element of a state-created-danger claim, June must plead that Dr. Young "exercised his … authority" to "affirmative[ly] act[ ]" in a way that "created a danger to [June] or rendered [her] more vulnerable to danger." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007).

June says Dr. Young encouraged her to visit and said she would be safe. But as our precedent holds, assurances and failures to warn are not affirmative acts. In one case, police assured a family that they would arrest a criminal but did not. *Bright*, 443 F.3d at 279. The criminal then murdered a child. *Id.* We held that "expressing an intention" to arrest without doing so was not an affirmative act. *Id.* at 284. In another case, police failed to warn a witness in a criminal case of the defendant's menacing behavior, even though the defendant was a convicted killer. *Walter v. Pike Cnty.*, 544 F.3d 182, 186–88 (3d Cir. 2008). Yet even if the police were "highly culpable," we

6

held, they could not be liable for failing to warn of private violence. *Id.* at 194. Likewise, we refused to hold a doctor liable for mistakenly assuring a seriously ill patient that he had "nothing to worry about and that he [was] fine." *Ye*, 484 F.3d at 635, 641.

Instead, an affirmative act must amount to a " 'restraint of personal liberty' that is 'similar' to incarceration or institutionalization." *Id.* at 640–41 (quoting *DeShaney*, 489 U.S. at 200). But Dr. Young did not rob June of her power to choose whether to visit. She was free to say no. Thus, the District Court properly dismissed June's claims against Dr. Young.

### B. Nurse Oglesby may be liable for leaving June alone with Brenden

The claim against Nurse Oglesby is another matter. The District Court found that Nurse Oglesby had not affirmatively acted to create a danger and that June had not suffered "foreseeable and fairly direct" harm as a result. App. 16. On both points, it erred. By leaving the room during June's visit, Nurse Oglesby may have facilitated Brenden's assault.

*1. The harm June suffered was "foreseeable and fairly direct."* To show that her injuries were foreseeable, June must allege that Nurse Oglesby had "actual knowledge or an awareness of risk that [was] sufficiently concrete to put [her] on notice of the harm." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). She does.

Nurse Oglesby was the head of Brenden's nursing team. While under her care, his mental health had "deteriorated

7

significantly," and he had "bec[o]me progressively more psychotic." App. 24 ¶31. Just three days before June's visit, he was "acting bizarrely" and attacked another patient. App. 25 ¶39. These facts would have put her on notice of the serious threat Brenden posed to his mother. Indeed, she repeatedly complained to June about Brenden's behavior.

The District Court found otherwise because Brenden had not attacked *June* before. But that focus is too narrow. *See Phillips*, 515 F.3d at 237 (noting that harm can be foreseeable even without any "history of violence"). "[C]ommon sense" tells us that it is "inherent[ly] risk[y]" to leave a visitor with a violent psychiatric patient—even if that visitor is the patient's mother. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 245 (3d Cir. 2016). So the harm was foreseeable.

June was also a direct victim of Brenden's attack. By ceasing to supervise June's visit with Brenden, Nurse Oglesby was "the catalyst for the attack." *Id.* at 246 (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997)) (internal quotation marks omitted). Brenden "watch[ed] Oglesby intently," waited for her to leave, and then attacked June. App. 37 ¶59. Plus, June was an "identifiable or discrete" victim: she was Brenden's visitor, not a random passerby. *Phillips*, 515 F.3d at 239. So June's injury was fairly direct as well as foreseeable.

*2. Nurse Oglesby's affirmative act endangered June*. June's allegations also satisfy the fourth element needed to plead a state-created danger. Greystone is a state hospital, so Nurse Oglesby is a state actor. And by exiting the visitation room, she made June "more vulnerable to harm." *Ye*, 484 F.3d at 640,

8

642. That leaves the affirmative-act requirement, which June satisfies too.

The District Court rejected June's claims on this ground. It found that June was alleging only inaction and that Nurse Oglesby's conduct had not "restrict[ed her] freedom to act on [her] own behalf." App. 15–16 (quoting *Ye*, 484 F.3d at 641). We disagree on both points.

June alleges action. She says Nurse Oglesby exited the room, withdrawing her supervision mid-visit. Giving and then taking away support is more than "failure to provide protection" or "to warn of a threat." *Walter*, 544 F.3d at 195. It is active conduct.

June also alleges that Nurse Oglesby deprived her of the ability to act on her own behalf. June entered the visitation room with the understanding that the visit would be supervised. She did that freely. But she could not leave on her own. June's "movements within the facility were controlled by Greystone personnel" and she "was not permitted to go outside" the visiting room. App. 35 ¶53. So when Nurse Oglesby left, June was robbed of the chance to decide whether to have an unsupervised visit or take extra precautions. And *that* is a plausible deprivation of liberty.

Nurse Oglesby's behavior resembles that of police officers who stopped a drunk couple, separated them, and then let the wife wander off alone. *Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir. 1996). It was a cold January night, just above freezing. *Id.* at 1203 n.14. The wife fell, was knocked out, and froze. *Id.* at 1203. The police, we held, had acted affirmatively and

9

"made [her] more vulnerable to harm." *Id.* at 1209. Nurse Oglesby's conduct had a similar effect on June. Nurse Oglesby assumed care but then withdrew it, leaving June alone in a more dangerous position. *Id.; see also Ye*, 484 F.3d at 640, 643.

Our holding is narrow. If June had knowingly agreed to an unsupervised visit, the result would likely be different. But on the facts alleged, Nurse Oglesby's departure deprived her of the freedom to avoid an unsupervised visit or to take other precautions. June has thus pleaded an affirmative act that put her in danger.

\* \* \* \* \*

June does not plead that Dr. Young took any affirmative act; his assurances do not count. But Nurse Oglesby may be liable for putting June in danger by withdrawing her supervision. So we will reverse in part and remand to let the District Court finish analyzing the other elements of June's state-created-danger claim against Nurse Oglesby.