NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2111
_____

ANDREY VOROBYEV, as Admin. to the Estate of Ivan Vorobyev, deceased,
Appellant

v.

BLOOMSBURG UNIVERSITY OF PENNSYLVANIA; COMMONWEALTH OF
PENNSYLVANIA, c/o: Office of the Attorney General; LAURA WOLFE, MSN,
CRNP; JOHN DOE AND JANE ROE # 1-10, Bloomsburg University
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-20-cv-01384)
Magistrate Judge: Hon. Martin C. Carlson
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2022

Before: HARDIMAN, RENDELL, and FISHER, *Circuit Judges*.

(Filed: May 12, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This tragic case arises out of the untimely death of Bloomsburg University student Ivan Vorobyev due to complications from diabetes. Ivan's father, Andrey, on behalf of Ivan's estate, sued one of the University's nurses who cared for Ivan just before his death. We agree with the District Court[1] that Andrey failed to state a claim under 42 U.S.C. § 1983, but we will remand so that Andrey can amend his complaint, unless the District Court determines that amendment would be futile.

## I[2]

Ivan was diagnosed with Type 1 diabetes as a child, and he notified the University of his condition on multiple occasions. His University medical file included a letter from his endocrinologist and a nurse practitioner describing Ivan's severe diabetes and warning that "[s]ustained high blood sugar levels may affect concentration and if untreated, can lead to nausea and vomiting and more serious complications such as ketosis and[,] if left untreated[,] life threatening diabetic ketoacidosis." App. 138.

In November 2018, Ivan suffered a severe episode of nausea, vomiting, abdominal pain, and high blood sugar. He called the Student Health Center to report his symptoms. Nurse Laura Wolfe treated Ivan when he arrived for his appointment later that day. She knew about Ivan's diabetes and treatment plan as well as the letter from his

---

[1] Magistrate Judge Martin Carlson presided by consent under 28 U.S.C. § 636(c).

[2] "On appeal from a dismissal, we take the allegations in [the plaintiff's] complaint as true," *Mears v. Connolly*, 24 F.4th 880, 882 (3d Cir. 2022), so we recount the facts as pleaded in the complaint.

endocrinologist. She also knew that Ivan exhibited symptoms of complications from diabetes, and she documented his extremely high blood sugar levels. Despite knowing that these complications could be lethal if left untreated, Nurse Wolfe diagnosed Ivan with "nausea with vomiting, unspecified," prescribed him medication for the nausea, and sent him back to his dorm until his father could take him home. App. 118 ¶ 36. Ivan went home with his father, where his blood sugar continued to rise until he collapsed and suffered cardiac arrest. Ivan was taken by ambulance to the hospital, where he died the next day. His cause of death was "cardiac arrest from hypovolemia, severe diabetic ketoacidosis, cerebral edema, and brain death." App. 119 ¶ 43.

Ivan's father, Andrey, brought federal and state claims against the University, the Commonwealth of Pennsylvania, Nurse Wolfe (in her official and personal capacities), and unidentified parties associated with the Student Health Center. Andrey gave up his claims against the University, the Commonwealth, and Wolfe in her official capacity. *Vorobyev v. Bloomsburg Univ. of Pa.*, 541 F. Supp. 3d 524, 529 (M.D. Pa. 2021). The anonymous parties have never been identified. Accordingly, Andrey's only remaining federal claim is against Wolfe in her personal capacity under § 1983. *Id.* The District Court concluded that Andrey failed to state a viable federal claim and dismissed the complaint "without prejudice to the litigation of the plaintiff's state law tort claims in state court." App. 82; *see Vorobyev*, 541 F. Supp. 3d at 529. This appeal followed.

II[3]

Andrey sued Nurse Wolfe on a state-created danger theory. This type of substantive due process claim requires Andrey to show:

(1) the harm ultimately caused to [Ivan] was foreseeable and fairly direct;

(2) [Nurse Wolfe] acted in willful disregard for [Ivan's] safety;

(3) there was some relationship between the state and [Ivan]; and

(4) [Nurse Wolfe] used [her] authority to create an opportunity for danger that otherwise would not have existed.

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (cleaned up). We focus on the fourth requirement. To satisfy that element, there must be an allegation "that state authority was affirmatively exercised in some fashion." *Id.* at 236. Inaction or omission will not do. *Id.* The District Court dismissed Andrey's complaint because his "state-created danger claim is based on Wolfe's inaction, rather than any affirmative conduct." *Vorobyev*, 541 F. Supp. 3d at 534–35. We agree.

The complaint purports to allege 11 affirmative acts by Nurse Wolfe. We first note that 8 of those allegations are framed in terms of what Wolfe "failed" to do, not affirmative acts she actually took. App. 123–24 ¶ 60(b)–(g), (i), (k). Another alleges that she "[d]elayed Ivan Vorobyev's examination and/or treatment

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 636(c)(1), 1331, 1343(a)(4), 1367(a). We have jurisdiction under 28 U.S.C. §§ 636(c)(3), 1291. "We exercise plenary review over a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

4

by an appropriate specialist." App. 123 ¶ 60(h). To show that Wolfe affirmatively delayed Ivan's treatment, Andrey would have to allege "a restraint of personal liberty that is similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (cleaned up); *see also Ye v. United States*, 484 F.3d 634, 641 (3d Cir. 2007) ("[A] 'deprivation of liberty' is a bedrock requirement of state liability under the substantive due process clause."). But there is no allegation that Wolfe affirmatively acted to prevent Ivan from seeing a specialist, much less that she restrained him from doing so. At worst, she misdiagnosed his symptoms, and that's the crux of the remaining two allegations: she "[i]ncorrectly diagnosed I[v]an . . . and sent him back to his dormitory," and she "[i]mproperly assessed the medical condition of Ivan." App. 123 ¶ 60(a), (j). But even actions which "could, and almost certainly do, give rise to a state law medical malpractice claim" do not constitute a state-created danger unless they also constitute a deprivation of liberty. *Ye*, 484 F.3d at 642.

In *Ye*, a doctor assured an ailing patient that "there is nothing to worry about." *Id.* at 635. The patient's family relied on the doctor's assurance and did not take the patient to the emergency room. *Id.* Later the same day, the family found the patient unconscious, and he was rushed to the hospital. *Id.* The patient received emergency bypass surgery, was hospitalized for more than a month, and required a ventilator after his release. *Id.* Despite expert testimony that the doctor's conduct was "unconscionable," *id.* at 636, we held that the doctor's assurances were not affirmative acts sufficient to make out a state-created danger claim. *Id.* at

5

642. Such claims "must be predicated on an affirmative act that works a deprivation of liberty," *id.* at 641, and the doctor did not deprive the patient of his liberty, *id.* at 643. If an affirmative assurance of well-being cannot constitute a deprivation, then misdiagnosis—the conduct at issue here—cannot either.

Andrey resists this conclusion, arguing that Wolfe committed an affirmative act by releasing Ivan back to his dorm. He cites three cases to establish that release constitutes an affirmative act, but none of them help his argument. The first is *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), where the police stopped a visibly drunk couple walking home. *Id.* at 1201. The police let the husband go home first, then left the intoxicated wife to find her own way home in the cold, which she never did. *Id.* at 1202–03. The wife suffered hypothermia that resulted in permanent brain damage. *Id.* at 1203. We held those facts sufficient to make out a state-created danger claim. *Id.* at 1211. The police affirmatively acted to remove the husband, "who presumably would have sheltered [the wife] from peril," *Johnson v. City of Phila.*, 975 F.3d 394, 399 (3d Cir. 2020) (citation omitted), thereby making her "more vulnerable to danger [than] had they not intervened," *Kneipp*, 95 F.3d at 1209. Thus, in *Kneipp*, the affirmative act was the release of a would-be protector. Here, Wolfe released Ivan, not a would-be protector, so *Kneipp* is no help to Andrey.

The second case—*L.R. v. School District of Philadelphia*, 836 F.3d 235 (3d Cir. 2016)—occurred in the unique setting of a kindergarten classroom. There, we held that a teacher who sent a kindergartner home with a child molester without

checking identification "affirmative[ly] misuse[d] . . . his authority as [the student's] teacher and 'gatekeeper.'" *Id.* at 244. The kindergarten teacher was "responsible for the safety of very young children" in his care; "hand[ing] over [that] responsibility to a private actor who, under the circumstances, posed an obvious risk of harm" was "an affirmative misuse" of his state-granted authority. *Id.* Wolfe had no comparable responsibility for Ivan, and she did not hand him over to a private actor who posed an obvious risk of harm.

In the third case—*Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165 (3d Cir. 2017)— the affirmative act was compulsion, not release. In *Mann*, a football coach "requir[ed a player] to continue to practice after sustaining" a big hit. *Id.* at 168. We stressed that the coach affirmatively "required [the student] to be exposed to a risk of harm by continuing to practice." *Id.* at 172. The affirmative act was the coach's use of his compulsive authority, not a mere release. Nurse Wolfe did not compel Andrey to do anything; according to the complaint, she misdiagnosed him and released him to his dorm.

We thus agree with the District Court that the complaint did not allege a valid state-created danger claim.

### III

Though the District Court properly dismissed Andrey's state-created danger claim against Wolfe, it abused its discretion when it failed to grant Andrey leave to amend his complaint. *See United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). "[I]n the event a complaint fails

7

to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend [his] complaint." *Phillips*, 515 F.3d at 228 (citation omitted). Despite Andrey's request to amend his complaint, the District Court did not grant leave to amend. The Court instead "dismissed without prejudice to the litigation of the plaintiff's state law tort claims in state court." App. 82. But because it did not engage in a futility analysis, the Court should have also granted leave to amend the complaint to substantiate the state-created danger claim. *See Phillips*, 515 F.3d at 228. Accordingly, we will remand the case so Andrey can amend his complaint, unless the District Court determines that amendment would be futile.

***

For the reasons stated, we will vacate the District Court's order and remand the case for further proceedings consistent with this opinion.

*Andrey Vorobyev, as administrator to the Estate of Ivan Vorobyev, deceased v. Bloomsburg University, Commonwealth of Pennsylvania, Laura Wolfe, MSN, CRNP*

No. 21-2111

_____

**RENDELL**, <u>Circuit Judge</u>, *concurring in the judgment*

I agree that the case should be remanded so that Andrey Vorobyev can have the opportunity to amend his complaint. But I do not view the facts alleged as so clearly lacking such that they fail to establish the prima facie element of an "affirmative act."

The majority urges that our opinion in <u>Ye v. United States</u>, 484 F.3d 634 (3d Cir. 2007), is relevant and that it supports the conclusion that "[i]f an affirmative assurance of well-being cannot constitute a deprivation, then misdiagnosis—the conduct at issue here—cannot either." Maj. Op., Section II. I disagree. The issue in <u>Ye</u> was "whether <u>a mere assurance can be an affirmative act</u>." 484 F.3d at 635 (emphasis added). The Court held that it cannot. <u>Id.</u> The Court did not confront, as we do here, whether an actual misdiagnosis can constitute an affirmative act for purposes of a state-created danger claim, and this remains an open question.

Moreover, the nurse here not only made an actual diagnosis that was wrong,[1] she prescribed medication for the wrong condition, "[r]efused" to refer her student and

---

[1] She affirmatively misdiagnosed him as suffering from acute "nausea with vomiting, unspecified." App. 117. Far from being unspecified nausea and vomiting, his high blood sugar, nausea, and vomiting were clearly associated with his Type I diabetes. A letter in his student medical file from the Yale Medicine Pediatric Endocrinology and Diabetes Clinic regarding his condition warned that this combination of symptoms, if left untreated, could lead to "life threatening diabetic ketoacidosis" and "significantly increase the risk of heart attacks and strokes." App. 138.

patient to a specialist, App. 123, and "sent" the eighteen-year-old under her care back to his school dormitory without medical supervision, App. 118.  Could the District Court on remand conclude that prescribing her patient the wrong medication, refusing to refer him to a specialist, declining to keep him for observation until his father arrived, and sending him to his dormitory where he would not be monitored or cared for by a medical professional, constituted one or more "affirmative acts" that made him "more vulnerable to danger" and, thereby, deprived him of liberty?  Ye, 484 F.3d at 638 (citing Bright v. Westmoreland Cnty., 443 F.3d 276 (3d Cir. 2006)).  I think so.

Like the wife in Kneipp, who was at the mercy of the police who released her in a state of intoxication into a winter night without assistance, the student here was at the mercy of the university's nurse who sent him to his dormitory in a state of diabetic emergency without assistance.  Kneipp v. Tedder, 95 F.3d 1199, 1202 (3d Cir. 1996).  Plaintiff deserves the opportunity to replead and support his case.