NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-1060

———————

LISA CHRISTMANN
In her capacity as Administrator of
The estate of Charles Christmann,
And on behalf of his heirs,

Appellant

v.

CYNTHIA LINK; OFFICER BROOKE DAVISON;
LT. [FNU] MCCLAIN; OFFICER JOHN and JANE DOES 1-20,
CORRECT CARE SOLUTIONS; WELLPATH, as successor corporation to and
formerly known as CORRECT CARE SOLUTIONS;
SAIQA MUSHTAQ, M.D.; BARBARA BUZDYGON; KRIS MARTIN;
JOHN and JANE DOES A-Z

———————

On Appeal from the Eastern District of Pennsylvania
(D.C. Civil No. 2:19-cv-01707)
District Court Judge: Eduardo C. Robreno

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2023

Before: AMBRO*, PORTER, and FREEMAN, *Circuit Judges*

(Opinion filed: February 10, 2023)

*Judge Ambro assumed senior status on February 6, 2023.

## OPINION[*]

FREEMAN, *Circuit Judge*.

Charles Christmann died from cardiac arrest while incarcerated in a Pennsylvania correctional facility. The administratrix of his estate brought claims under 42 U.S.C. § 1983 and state tort law against the facility's superintendent, and the District Court granted summary judgment in the superintendent's favor. For the reasons that follow, we will affirm the District Court's judgment.

I.

Christmann was incarcerated at the State Correctional Institution at Graterford ("Graterford"), which housed approximately 3,000 inmates in five major housing units. Each housing unit was about half a mile long and was monitored by officers in three shifts, one of which was an overnight shift from 10:00 p.m. to 6:00 a.m. The number of officers on duty varied by shift, with two officers per housing unit on duty during the overnight shift and seven officers per housing unit on duty during the other shifts. Graterford had an unwritten policy that required officers to outnumber inmates before entering a cell (the "3:2 Policy"). Christmann was housed in Unit E, which was approximately one mile from where the next closest officer was stationed.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Just after midnight on February 3, 2018, Christmann's cellmate found Christmann convulsing and foaming at the mouth. The cellmate immediately called for help. Two officers responded approximately thirty minutes later. Per the 3:2 Policy, they radioed for assistance and were instructed to wait until a third officer arrived before entering the cell. When a third officer arrived six minutes after the radio call, the officers entered the cell and began administering CPR until emergency medical assistance arrived and transported Christmann to Graterford's medical center. A municipal ambulance arrived at approximately 1:04 a.m., and ambulance personnel declared Christmann dead at 1:16 a.m. A medical expert later determined the cause of death to be cardiac arrest and concluded that the delay in medical care played a causal role in Christmann's death.

The administratrix of Christmann's estate, Lisa Christmann ("the Estate"), brought Eighth Amendment and state law claims against Graterford's then-superintendent, Cynthia Link, alleging supervisory liability.[1] Link filed a motion to dismiss the Estate's second amended complaint for failure to state a claim and qualified immunity. The District Court initially granted the motion and dismissed all claims against Link, but it then reconsidered its dismissal of the supervisory liability claim and permitted Link to file a motion for partial summary judgment on that claim. The District Court granted summary judgment in Link's favor, and the Estate timely appealed.[2]

---

[1] The Estate also brought claims against additional defendants, none of whom remain in the case at this stage.

[2] The District Court granted summary judgment in favor of three other defendants but denied summary judgment as to one of the responding officers. After a trial, a jury returned a verdict in that officer's favor. Thereafter, the District Court issued a final

3

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine factual dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts are to be viewed in the light most favorable to the nonmoving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).

## III.

The Estate argues that the 3:2 Policy—when viewed alongside other factors, including the size of Graterford, the distance between units, and the number of staff in each unit during the overnight shift—created an unconstitutional risk that inmates would be denied timely medical attention, and ultimately caused Christmann's death. It also argues that Link acted with deliberate indifference to the consequences when she established and maintained the 3:2 Policy. While Christmann's death was tragic, there is insufficient evidence in the record to support an Eighth Amendment claim of supervisory liability against Link.

order in this matter. The Estate appeals only the grant of summary judgment in Link's favor.

4

Among other things, to withstand summary judgment on its supervisory liability claim the Estate had to "identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227. An unreasonable risk of injury can be shown by evidence that harm to inmates has occurred on numerous occasions or that the risk of constitutionally cognizable harm is "so great and so obvious" to support a finding that a supervisor must have known of the excessive risk but was indifferent to it. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001). Here, the record does not support either method of demonstrating an unreasonable risk.

Christmann's death is the only substantial injury in the record reasonably attributable to the 3:2 Policy. Although the record includes documentation of sixteen Graterford inmate deaths due to cardiac events in the three years before Christmann's death, it does not support a finding that the 3:2 Policy contributed to the inmates' deaths. Of the sixteen documented deaths, at most five inmates were reported to have experienced their cardiac events while in their cells, and none of those five cardiac events were reported during the overnight shift when the 3:2 Policy was relevant. No other evidence in the record could plausibly support a finding that the 3:2 Policy—in conjunction with Graterford's size, layout, and overnight staffing—caused a pattern of inmate harm.

Nor does the record support a finding that the risk to inmates was "so great and so obvious" that Link must have recognized and disregarded it. In support of the greatness

5

and obviousness of the risk, the Estate points to the delay in Christmann's medical care and "common sense" consideration of the 3:2 Policy alongside Graterford's size, layout, and staffing. But the standard "requires more than evidence that the defendant[] *should* have recognized the excessive risk and responded to it; it requires evidence that the defendant *must* have recognized the excessive risk and ignored it." *Beers-Capitol*, 256 F.3d at 138. The Estate has not met its burden of showing a genuine issue of material fact as to Link's knowledge of the risk.

The record does not support a finding that the 3:2 Policy created an unreasonable risk of harm to incarcerated individuals at Graterford, so the District Court properly granted summary judgment in Link's favor on the Eighth Amendment claim. Because the Estate's state law claim is contingent on the success of its constitutional claim, the District Court properly granted summary judgment on the state law claim as well.

For the reasons stated above, we will affirm the District Court's grant of summary judgment.