NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3183
_____

RHONSHAWN JACKSON,
Appellant

v.

UNIT MANAGER MICHAEL KNAPP; GRIEVANCE COORDINATOR/ASSISTANT
BRUBAKER; SUPERINTENDENT SOLOMON; CORRECTIONAL OFFICER ANNA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:22-cv-00138)
District Judge:  Honorable Malachy E. Mannion

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 3, 2025
Before:  HARDIMAN, MATEY, and CHUNG, <u>Circuit Judges</u>

(Opinion filed: July 9, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Rhonshawn Jackson, an inmate at Pennsylvania State Correctional Institution Rockview, appeals *pro se* from the District Court's order granting summary judgment in favor of appellees, four prison officials. We will affirm.

I.

Jackson has been in the custody of Pennsylvania's Department of Corrections for more than two decades. He was transferred to SCI Rockview in 2020 and assigned to the Behavioral Management Unit ("BMU"), initially as a Phase 5 inmate, the most restrictive classification as far as privileges are concerned. Through hard work and good behavior, Jackson advanced to Phase 2, a step at which prisoners may—in the discretion of prison staff—participate in certain educational and vocational programs, access a "mini" law library, and order personal items like sneakers and packages of food. Jackson was not offered the full panoply of Phase 2 privileges, so he filed a formal grievance and then appealed unsuccessfully when it was denied.

Privileges aside, conditions at SCI Rockview were less than satisfactory to Jackson. He often complained about the presence of insects and vermin in his cellblock; broken computers and outdated legal resources in the library; a shortage of grievance forms and submission boxes; unsanitary bedding and soiled prison uniforms; and the general lack of cleaning supplies. All told, Jackson filed 44 grievances concerning those and other issues in less than two years—a frequency he claims was not without personal consequence. For example, prison guards allegedly retaliated against Jackson in August 2020, just days after he lodged a complaint with Unit Manager Michael Knapp, by stealing a brand-new pair of sneakers he recently had purchased. Knapp purportedly

2

responded to news of Jackson's pilfered footwear by telling him that staff might have chosen another inmate's shoes if he had not filed so many complaints, prompting yet another grievance. By the end of October 2021, the prison limited Jackson to filing one grievance every 15 working days after he filed five frivolous complaints in one month; his appeal of the restriction failed. The 90-day restriction did not prohibit Jackson from appealing the denial of his previous grievances.

Jackson temporarily was transferred to another prison around the time of the grievance injunction. When he returned to SCI Rockview, he discovered that some of his legal materials were missing. He claims a correctional officer confessed to having stolen the documents for Knapp. He also avers that he was moved to a cold cell near the Restricted Housing Unit, whose rowdy occupants kept him awake, caused him mental distress, and left him stricken with COVID-19, which he attributes to Knapp's failure to enforce proper mitigation protocols. Jackson contends that he lodged grievances for these discrete episodes as well, but they do not appear among the 44 complaints in his voluminous prison file, which defendants submitted to the District Court.[1]

Jackson initiated this matter in January 2022 by filing a complaint in the United States District Court for the Middle District of Pennsylvania against Knapp, Superintendent Bobbi Solomon, the prison's grievance coordinator, and the correctional

---

[1] Following defendants' submission, Jackson presented the District Court with grievance forms addressing his missing documents, cell conditions, and COVID diagnosis, which he claims the prison barred him from filing. The timing of Jackson's proffer, and the conspicuous lack of the standard date-and-time stamps that accompany each of his 44 other grievances, caused the court to question the forms' veracity.

officer who allegedly took his legal documents. He twice amended his complaint, ultimately asserting claims under 42 U.S.C. §§ 1983 and 1985 for violations of his First, Eighth, and Fourteenth Amendment rights, and for civil conspiracy. Defendants filed a motion to dismiss, which the District Court converted into a motion for summary judgment and granted. The court concluded that Jackson could not sustain any constitutional claims against Solomon because he failed to demonstrate her personal involvement in the alleged wrongdoing, and each defendant was entitled to qualified immunity on his Eighth Amendment claims regardless. Jackson's failure to exhaust his administrative remedies by forgoing appeals of all but one of his unrequited grievances, and by failing to file bona fide grievances regarding the problems he allegedly encountered after returning from his temporary transfer, likewise doomed his constitutional challenges. Notwithstanding that procedural default, the District Court analyzed each of his claims on their merits and found them legally deficient as well. Jackson appeals.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

III.

Jackson contends that the District Court erred in granting summary judgment in favor of appellees because the allegations in his second amended complaint and the declaration he attached thereto alone create genuine issues of material fact. We disagree. For the bulk of Jackson's constitutional claims, we begin and end with administrative exhaustion. "The Prison Litigation Reform Act of 1995 ('PLRA') requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (citing 42 U.S.C. § 1997e(a)). Failure to do so will render a claim procedurally defaulted. See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004). In Pennsylvania, the Department of Corrections follows a three-step process for resolving grievances: initial review by a grievance officer, direct appeal to the facility manager, and an appeal to the Secretary's Office of Inmate Grievances and Appeals for final review. See id. at 232.

The record before us demonstrates that Jackson only appealed the denial of one of the 44 grievances he filed.[2] His efforts to excuse his habitual procedural default are unavailing. He claims that prison officials took a number of steps to obstruct his ability to exhaust the grievance process, but none explains his failure to file appeals. To the extent he blames the grievance restriction he received in October 2021, that argument

---

[2] The lone exception was the denial of Jackson's grievance regarding his inability to advance beyond Phase 2. As to that issue, the District Court correctly concluded that Jackson's due-process claim is meritless because inmates do not have a constitutional right to a specific security classification within a given institution. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 225 (3d Cir. 2015) (citing Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983)).

fails because all but a handful of the grievances upon which his claims are based were denied long before the restriction was imposed, and the restriction, by its plain terms, did not implicate the administrative appeals process whatsoever. Jackson offers no evidence that prison officials prohibited him from filing appeals from any grievance denials so as to create a genuine dispute of material fact. That omission dooms his constitutional challenges stemming from the 43 grievance denials he failed to appeal.

What remain are Jackson's claims arising after his return to SCI Rockview following a brief administrative transfer. Jackson says the prison barred him from filing grievances raising complaints about his missing documents, low cell temperature, and COVID diagnosis, which he attached as exhibits in support of his opposition to defendants' summary judgment motion. Although the District Court expressed its skepticism of the forms' provenance, it ultimately resolved Jackson's claims on the merits. The court concluded that his COVID exposure and the cold cell conditions he experienced briefly did not violate the Eighth Amendment under prevailing Supreme Court and Third Circuit precedent, and that neither those incidents nor the one involving his missing legal documents—which, in Jackson's own telling, were confiscated inadvertently as contraband when all of the contents of his cell were packed up in anticipation of his return and relocation to a new cell—amounted to retaliation under the First Amendment. We agree largely for the reasons stated by the District Court.

We also agree that the prison's grievance process afforded Jackson an adequate post-deprivation remedy to address his missing documents. See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). The record shows that Jackson

6

filed a grievance about the confiscation of his trial transcripts and a draft complaint upon returning to SCI Rockview in November 2021, which the prison's grievance coordinator time-stamped and then rejected in light of the then-extant 15-day grievance restriction. Jackson could have refiled that grievance a few days later upon the expiration of the restricted filing period, but he did not. He cannot now charge appellees with violating his due process rights in connection with those materials.

Lastly, as the District Court aptly noted, Jackson's civil conspiracy claim under Section 1985 fails because he did not allege, must less proffer any evidence, that appellees harbored "invidiously discriminatory animus" against him because of his race or class. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006). The gravamen of Jackson's lawsuit has always been that prison officials mistreated him because he frequently used the grievance process. Section 1985 does not provide a cause of action for the kind of tortious conspiracy he alleges.

For the foregoing reasons, will affirm the judgment of the District Court.